# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| JUAN SERRANO, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | CAUSE NO.: 2:05-CV-222-TS |
| ED BUSS, | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Juan Serrano, a *pro se* prisoner, filed this *habeas corpus* petition under 28 U.S.C. §2254. [Petition for Writ of Habeas Corpus, DE 1]. Serrano asks the Court to vacate his August 2, 2001, Indiana convictions for murder and attempted murder following a jury trial. The Respondent has complied with the Order to Show Cause [Response to order to Show Cause, DE 27], and submitted a supporting brief [Brief in Support of Response to Order to Show Cause, DE 28] as well as the state court record. [State Court Record, DE 29]. Serrano did not file a traverse and the time to do so has expire.

## FACTUAL AND PROCEDURAL BACKGROUND

On appeal from Serrano's state petition for post-conviction relief, the Indiana Court of Appeals set forth the following factual and procedural history of the case:

> This senseless tragedy resulted from gang-related violence. Serrano, Sam Lozado ("Lozado"), Jason Varga ("Vargas"), and Santiago Soto ("Soto") were members of a gang known as the "Imperial Gangsters." Joel and Ruben Escalante (individually, "Joel" and "Ruben") were members of a rival gang, "Latin Kings." In October of 2000, Joel worked as a bouncer at Matt's Tap, a bar located in Imperial Gangster territory.
>
> On October 13, 2000, at approximately 6:00 p.m., Lozado got into a gang-related fight with Ruben in front of Matt's Tap. Joel broke up the fight, pushed Lozado into

a car, and ordered the driver to leave. At a nearby stop sign, Lozado rolled down his window and told Ruben that " he was gonna come back and shoot him." Tr. at 294. Lozado then told Serrano and other members of Imperial Gangsters about the incident at Matt's Tap. Serrano wanted to know "what are we going to do about it." Id. at 391. In the early morning hours of October 14, 2000, Serrano, Vargas, Soto, and Adalberto Gonzalez ("Gonzalez") drove to an alley by Matt's Tap. Serrano and Vargas exited the car while, Gonzalez and Soto remained inside.

At approximately 2:30 a.m., David Garlarza ("Garlarza") and his uncle, Hector Luis Madera ("Madera"), were seated at the bar at Matt's Tap. Joel was still working at this time. Serrano walked into the bar and fired his gun, multiple times. Garlarza and Madera were both shot in the back; Madera died form his injuries.

Approximately sixty seconds after Serrano and Vargas had left the car, Soto "heard some gunshots." Id. at 215-16. Twenty to twenty-five seconds later, Serrano and Vargas ran back to the car. Serrano had a Tec-9 gun in his hand and " he was trying to holster it in his waistband, to keep it from falling." Id. at 216. When Serrano entered the car, he instructed Soto to drive back to the house but not to drive erratically or stupidly. When the four arrived back at the house, Serrano told Lozado that " he had shot and the gun jammed up on him, and he cocked it and shot again and was shooting on his way out." Id. at 364.

Kevin Judge ("Judge"), a technician at the Lake County Crime Lab, determined that three spent bullets found at Matt's Tap were fired from the same gun. Judge also concluded that "[b]ased on the class characteristics, caliber, number of lands and grooves, direction of twist and the width of those lands and grooves . . . the Intratec, Tec-9, was one of the possible firearms that could have fired [the] bullets." Id. at 473. Judge also determined that the four shell casings found at the scene of the crime were also fired from the same gun, which had to have been a Tec-9. Further, upon analyzing the evidence at the scene, Judge testified that, at one point, the gun had misfired or malfunctioned. During police interrogation, Serrano admitted that he was at the scene, but denied being the shooter.

On October 21, 2000, the state charged Serrano with murder, attempted murder, and aggravated battery. Serrano's first trial ended in a mistrial because the jurors were deadlocked. At Serrano's second trial, Galarza made an in-court identification of Serrano as the individual who shot him at Matt's Tap. At trial, Serrano attacked the credibility of Joel and Garlarza because they failed to identify him as the shooter until several months after the incident in question. At the conclusion of the trial, the jury found Serrano guilty as charged.

Serrano appealed his convictions to the Indiana Court of Appeals. However, on February 13, 2002, Serrano moved to dismiss the appeal without prejudice and to petition the trial court for post-conviction relief, which another panel of this court granted. On June 11, 2002, Serrano filed a petition for post-conviction relief alleging

that Joel's testimony was incredibly dubious. After conducting an evidentiary hearing, the post-conviction court denied Serrano's petition for relief.

*Serrano v. State*, unpub., 45 A04-0308-PC-422 (Ind. April 6, 2004) [DE 27-8].

The single issue Serrano raised on appeal from denial of his petition for post-conviction relief was insufficiency of evidence to support the convictions based upon Joel's "incredibly dubious" testimony. Due to the existence of "multiple witnesses and . . . circumstantial evidence," the state appellate court found that the incredibly dubious doctrine did not apply. It also deemed the evidence constitutionally sufficient. [DE 27-8 at 7-8].

After the Indiana Supreme Court denied transfer, Serrano filed this Petition asserting two grounds for relief. First, Serrano claims that, contrary to the Fourteenth Amendment, the evidence did not support his convictions. Next, he alleges that appellate counsel's ineffectiveness in not raising meritorious issues violated his Fifth, Sixth, and Fourteenth Amendment rights. Although Serrano had exhausted his first ground for relief, he conceded that he had not exhausted the second one, appellate counsel's alleged ineffectiveness. The Indiana Court of Appeals granted Serrano permission to file a successive petition for post-conviction relief in the trial court. Subsequently, on December 7, 2005, this Court granted Serrano's motion to stay the case allowing him to pursue post-conviction proceedings in the trial court to exhaust the ineffective assistance of appellate counsel claim. [DE 16].

On January 9, 2008, more than two years after staying this case, the Court ordered Serrano to submit a status report of the state court proceedings. [DE 19]. Because Serrano's first status report did not provide adequate information, the Court ordered him to file another one. [DE 21]. In the second status report the Court required him to file, Serrano reluctantly revealed

he had filed a post-conviction review petition in the state court on November 5, 2005,[1] before the Court stayed the case. Serrano further reported that appointed counsel later withdrew from the state court proceedings on February 16, 2006. Then, Serrano divulged that on April 11, 2006, he withdrew the petition for post-conviction review from consideration. [DE 22 at 1-2]. Because Serrano's status report indicated that no state court proceedings were pending, the Court then ordered the Respondent to show cause why it should not grant the Petitioner relief.

## HABEAS REVIEW STANDARDS

A state prisoner is entitled to a writ of habeas corpus if he is being held under a state court judgment obtained in violation of the Constitution. 28 U.S.C. § 2254(d). The writ may be granted under § 2254 only if the state court judgment either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*.

Before considering the merits of a § 2254 petition, however, a district court must determine "whether the petitioner exhausted all available state remedies and whether the petitioner raised all his claims during the course of the state proceedings." *Verdin v. O'Leary*, 972 F.2d 1467, 1472 (7th Cir. 1992) (quotation marks omitted). "If the answer is 'no,' the petition is barred either for a failure to exhaust state remedies or for a procedural default." *Id*. (quotation marks omitted); *see also Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000).

---

[1]The Chronological Case Summary that the Respondent filed shows Serrano filed the successive petition for post-conviction review in the appellate court on November 10, 2005, which indicated it would be forwarded to the public defenders office. [DE 27-4 at 3].

Exhaustion is a procedural requirement that serves to promote comity between the federal and state governments. *See Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). For a state prisoner to exhaust his state court remedies, he "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A petitioner exhausts his state remedies if he fairly presents them to the state court:

> Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts. *Baldwin v. Reese*, 541 U.S. 27 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). "Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding does it make sense to speak of the exhaustion of state remedies." *Id.* at 276. Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings. *Boerckel*, 526 U.S. at 845. This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory. *Ibid*.

*Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004) (parallel citations omitted); *Accord Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (quotation marks omitted).

Procedural default and exhaustion are closely related. The Seventh Circuit has described procedural default as follows:

> The procedural default doctrine, which like the exhaustion doctrine is grounded in principles of comity, federalism, and judicial efficiency . . . normally will preclude a federal court from reaching the merits of a habeas claim when either (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred.

*Perruquet*, 390 F.3d at 514 (citations omitted). This often happens where a petitioner waives a

claim under the state rules. *Miranda v. Leibach*, 394 F.3d 984, 991–92 (7th Cir. 2005). But the last state court to address the claims must "clearly and expressly" base its decision on the state law ground. *Coleman v. Thompson*, 501 U.S. 722, 731–35 (1991); *see also Harris v. Reed*, 489 U.S. 255 (1989); *Farmer v. Litscher*, 303 F.3d 840, 846 (7th Cir. 2002). Further, the state law ground is adequate "only if the state court applies the rule in a consistent and principled way." *Miranda*, 394 F.3d at 991. When the adequate and independent state ground doctrine applies, the federal court generally will not review the issue. *Coleman*, 501 U.S. at 729; *see also Miranda*, 394 F.3d at 991.

The procedural default bar will not preclude habeas review where the petitioner can demonstrate either cause and prejudice for his default or that failure to review the defaulted claim will result in a miscarriage of justice. *Perruquet*, 390 F.3d at 514.

> In order to show . . . that a miscarriage of justice would result if habeas relief is foreclosed, the petitioner must show that he is actually innocent of the offense for which he was convicted, *i.e.*, that no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court.

*Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).


**DISCUSSION**

At the outset, Serrano admitted that he never presented his ineffective appellate counsel claim in any state court; he raised it for the first time in his habeas petition. [DE 1 at 3]. As a result, the Petition he filed contains both exhausted and unexhausted claims. Typically, such a petition is referred to as a "mixed petition." *See Rhines v. Weber*, 544 U.S. 269, 273 (2005) "[F]ederal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Id.*

6

> Accordingly, we imposed a requirement of "total exhaustion" and directed federal courts to effectuate that requirement by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to present the unexhausted claims to that court in the first instance.

*Rhines v. Weber*, 544 U.S. at 274.

Serrano knowingly filed a mixed petition. He cited the *Rhine* decision in the Petition, notifying the Court he intended to seek a stay (which the Court later granted). He also persuaded the state appeals court to grant him permission to file a second state petition for post-conviction review so that he could exhaust the claim. Before the trial court ruled upon the petition, however, Serrano chose to withdraw it. By withdrawing the petition, Serrano left the claim of appellate counsel's alleged ineffectiveness unexhausted. The Respondent asks the Court to require Serrano to elect to either withdraw the unexhausted claim only and proceed on the remaining one, or withdraw the entire petition. [Mem. in Support of Return to Order to Show Cause 1, DE 28].

By not filing a traverse, Serrano's silence, in effect, speaks for dismissal. There is no question that Serrano realized his is a mixed petition, which *Rhine* compels the Court to dismiss. When Serrano filed the Petition, just a "couple of days"[2] remained before the limitation period expired. Undoubtedly, that is why Serrano opted to file this "protective habeas" in the first place. *Rhines*, 544 U.S. at 277–78; *Powell v. Davis*, 415 F.3d 722, 728 (7th Cir. 2005). Filing the

---

[2] Serrano did not reveal the exact number of days that remained. On October 1, 2001, his assigned appellate counsel filed a Notice of Appeal. [DE 27-4 at 6]. Subsequently, on March 14, 2002, the Indiana Court of Appeals remanded the matter to the trial court in accordance with state procedure [DE 1 at 2, fn. 1] to pursue a post-conviction motion, which he filed on June 11, 2002. [*Id.* 5-6.] The trial court denied the state petition for post-conviction review on August 8, 2003. The state court of appeals affirmed the denial of the post-conviction on April 6, 2004(certified 5/18/04) [DE 27-5 at 2], Consequently, the period to file the petition was set to expire on May 6, 2004, one year after the time to seek transfer ended. Serrano signed the Petition on May 3, 2005. [DE 1 at 4]. Thus, it appears that three days remained for Serrano to timely file the *habeas corpus* petition here. 28 U.S.C. § 2244(d)(1)(A); *See Lawrence v. Florida*, 549 U.S. 327 (2007) (holding that extension of limitations period to include ninety-day period to file certiorari applies only on direct review).

Petition did not toll the time available for Serrano to return to state court to exhaust the claim. *Tucker v. Kingston*, 538 F. 3d 732, 734 (7th Cir. 2008) (citing *Rhines v. Weber*, 544 U.S. at 274 ("the filing of a petition for *habeas corpus* in federal court does not toll the statute of limitations")). Serrano filed the Petition on May 31, 2005, and the limitations period expired three days later.

Since Serrano voluntarily withdrew the motion for post-conviction review containing the unexhausted claim, he cannot demonstrate cause to excuse the default of the claim that counsel was ineffective. In addition, Serrano did not file a traverse, seek leave to file an amended petition, or otherwise attempt to show that a miscarriage of justice would result if the Court did not review the unexhausted claim. *See Perruquet*, 390 F.3d at 514–15 (setting forth the equitable exceptions to the procedural default doctrine); *U.S. ex rel. Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001).

## CONCLUSION

Because the Court already stayed the case to permit Serrano to exhaust his claim that appellate counsel was ineffective, dismissal of the mixed petition is now appropriate.

Therefore, the Court **DISMISSES** the *habeas corpus* Petition [DE 1].

SO ORDERED on March 4, 2009.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION